UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENISE HORN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONESTA CHICAGO LLC d/b/a SONESTA CHICAGO O'HARE and SONESTA INTERNATIONAL HOTELS CORPORATION,<br><br>Defendants. | Case No. 1:22-cv-2362<br><br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Denise Horn ("Plaintiff"), on behalf of herself and the proposed class (defined below), brings this action against Sonesta Chicago LLC d/b/a Sonesta Chicago O'Hare ("Sonesta Chicago") and Sonesta International Hotels Corporation ("Sonesta International") (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiff Denise Horn is dependent upon a wheelchair for mobility as the result of a medical condition that rendered her quadriplegic.

2. Plaintiff enjoys traveling with her friends and family, which requires her to stay at hotels from time to time. When she stays in a hotel, she stays in an accessible room that has special features calculated to accommodate her mobility impairment.

3. Due to muscle fatigue and lack of mobility in her arms, Plaintiff relies on a lift to transfer her from her wheelchair to other horizontal surfaces. To safely operate the lift for transfer to horizontal surfaces, there must be under surface clearance of at least five (5) inches.

1

4. Hotel under bed clearance has been reduced or eliminated due to the proliferation of solid pedestal beds and low frames. This has occurred not only in standard hotel rooms, but also in otherwise accessible rooms. This phenomenon has become pervasive across all hotel lodging categories from budget to high-end luxury properties.[1]

5. On average, bed lifts require 4 - 6 inches of under-bed clearance to operate safely.

6. This reduction in under-bed clearance can cause it to be virtually impossible for a wheelchair user like Plaintiff to transfer from her wheelchair to the bed surface. This is because of the lack of clearance under the bed to properly use a lift to facilitate the transfer.

7. This phenomenon can cause an otherwise accessible hotel room to be utterly inaccessible.

8. Placing an inaccessible bed in a so-called accessible room constitutes a fundamental violation of the Americans with Disabilities Act ("ADA").

9. The existence of these issues are well-known in the hospitality industry, and in fact, many of Defendants' industry peers have either already addressed, or are planning to address, the issue directly so as not to impede the usability of their accessible rooms by the very individuals who are the putative customers for those rooms.

10. In this case, Plaintiff seeks injunctive and declaratory relief compelling Defendants to follow the general accessibility mandate of the ADA, and the ADA's requirement that public

---

[1] *See* Disability Rights Education & Defense Fund, *Beds in Accessible Guest Rooms and Sleeping Rooms*, https://dredf.org/public-policy/dredfs-model-comments-on-the-doj-anprm/beds-accessible-guest-rooms-sleeping-rooms/ (last accessed: May, 5, 2022) ("Many beds are placed on stationary platforms (AKA stationary box frames). These stationary platforms not only limit access for lifts, they make it impossible to move the bed in any direction if someone should need to move it to create an accessible pathway on either side of the bed . . . .").

accommodations make reasonable modifications to facilitate accessibility, by eliminating these issues in their accessible rooms.

## BACKGROUND

11. For more than 30 years, the ADA has required that individuals with disabilities be provided full and equal access to the goods, services, and facilities provided by hotel owners and operators.

12. This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

13. According to the 2019 J.D. Power North America Hotel Guest Satisfaction Index Study, the quality of sleep is the top variable determining guest satisfaction during a hotel stay.[2]

14. However, many hotel operators, including Defendants, do not offer sleeping beds that are accessible to hotel patrons with disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

15. In failing to provide guest rooms with accessible sleeping surfaces, Defendants have engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing the Sonesta Chicago hotel and any of Sonesta International's hotels (including Plaintiff), and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages, and accommodations that Defendants offer to the public.

---

[2] Available at https://www.jdpower.com/business/press-releases/2019-north-america-hotel-guest-satisfaction-index-nagsi-study (Last accessed May 5, 2022).

16. Defendants' discrimination violates Title III of the ADA, and unless Defendants are required to change their policies and practices so that Defendants' goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendants' hotels and will be deterred from using Defendants' hotels. Indeed, it is difficult to imagine a more fundamental violation of the general accessibility mandate of the ADA.

17. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

> a) Defendants offer the required number of accessible rooms with accessible sleeping surfaces (*i.e.*, beds) at each of the hotels that they manage and/or operate, consistent with the ADA's room dispersal requirements; and
>
> b) Defendants change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodation to individuals with disabilities related to the provision of accessible sleeping surfaces (*i.e.*, beds) at each of the hotels that they manage and/or operate.

18. Plaintiff's claims are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

19. The ADA was signed into law by President George H.W. Bush more than thirty

years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

20. When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010), p. 138.[3]

21. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

22. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals

---

[3] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf (Last accessed May 5, 2022).

(42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

23. The United States Department of Justice ("DOJ") has issued scoping regulations which operate in tandem with the general accessibility mandate of the ADA.

24. The ADA's statutory language expressly requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25. The same requirement that public accommodations must make reasonable modifications to facilitate accessibility is also expressly set forth in the ADA's regulations. *See* 28 C.F.R. §36.302.

26. While the ADA's implementing regulations also address specific accessibility requirements with respect to certain elements in hotels, those regulations are silent regarding clearance under the bed.

27. The DOJ has long taken the position that the fact that a specific element in a public accommodation is not addressed in the ADA's implementing regulations does ***not*** change the fact that a public accommodation's goods and services have to be accessible:

> Where the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADA's general nondiscrimination requirements and the ADA's overarching equal access mandate. These requirements include the obligation to make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services . . . .

6

> [T]his silence does not mean that, as a categorical matter, hotels have no obligation to provide beds that are usable by people with disabilities. Rather, because the ADA Standards do not address hotel bed height, the next step in the analysis is to look to the ADA's general nondiscrimination requirements, including the obligation to make reasonable modifications. (internal citations omitted).

Statement of Interest of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-01095-NR (W.D. Pa. June 7, 2021), attached as Exhibit 1, at 4-5. [4]

28. This fact is illustrated in the specific context of hotel accessibility in a Technical Assistance letter authored by Bill Lan Lee, Acting Assistant Attorney General, Civil Rights Division of the Department of Justice, which states:

> Under the Americans with Disabilities Act of 1990 (ADA), the Department of Justice issues regulations that detail ADA requirements for over six million places of public accommodation, including hotels. The Department's existing rules contain requirements on what constitutes an accessible hotel room and also require that hotels make reasonable modifications in policies, practices or procedures when the modifications are necessary to provide accessibility but would not fundamentally alter the hotel's operations. ***The Department has never provided guidance on whether hotels are required to have open-framed beds in accessible guest rooms to accommodate person with disabilities who travel with portable mechanical lifts. However, it appears that it would be a reasonable modification for a hotel to provide open-frame beds and would not fundamentally alter the hotel's operations to do so***.

*See* DOJ Technical Assistance Letter dated June 13, 2000, attached as Exhibit 2, (emphasis added).

29. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

---

[4] *See also Mullen v. Concord Hosp. Enterprises Co., LLC*, No. 2:20-01530-RJC, 2022 WL 295880 (W.D. Pa. Feb 1, 2022) (denying motion to dismiss under FRCP 12(b)(6) on analogous case); *Migyanko v. Aimbridge Hosp., LLC*, No. 2:20-cv-1095-NR, 2022 WL 345058 (W.D. Pa. Feb. 4, 2022) (same)*; Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. 2:21-cv-01058-CB (W.D. Pa. Apr. 6, 2022) (ECF 18) (same).

7

## JURISDICTION AND VENUE

30. The claims alleged arise under Title III of the ADA such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31. Personal jurisdiction exists because Defendants own, manage, and/or operate hotels located in this District.

32. Venue in the Northern District of Illinois is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred. The Sonesta Chicago O'Hare Airport Hotel is located in Cook County, Illinois.

## PARTIES

33. Plaintiff, at all times relevant hereto, is and was a resident of Janesville, Wisconsin.

34. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

35. Defendant Sonesta Chicago LLC is a limited liability company organized under Maryland law with its headquarters at 2 Newton Place, 255 Washington #300, Newton, Massachusetts 02458.

36. Defendant Sonesta International Hotels Corporation is a corporation organized under Maryland law with its headquarters at 2 Newton Place, 255 Washington #300, Newton, Massachusetts 02458.

## FACTUAL ALLEGATIONS

37. Defendant Sonesta Chicago owns, manages, and/or operates the Sonesta Chicago O'Hare Airport Hotel located at 10233 West Higgins Road, Rosemont, Illinois 60018. Defendant Sonesta Chicago is one of the hotels under the overarching direction and control of Sonesta International.

38. Defendant Sonesta International owns, manages, and/or operates hotels throughout the United States. Upon information and belief, Sonesta International operates a portfolio of over 250 hotels and/or resorts located throughout the United States.

39. As a fundamental part of these operations, Defendants provide hotel rooms with sleeping beds to their customers.

40. Within the applicable limitations period, Plaintiff stayed at the Sonesta Chicago O'Hare Airport Hotel located in Rosemont, Illinois, and experienced accessibility issues with the bed in her accessible room due to the under-bed clearance not providing enough room for her lift.

41. Plaintiff's lift that transfers her from her wheelchair to the bed requires five (5) inches of under-bed clearance, and the average required amount of clearance for a transfer lift is 4-6 inches.

42. The sleeping surfaces of the beds in Defendants' accessible rooms at the Sonesta Chicago provide such limited clearance under the bed that they render it difficult if not impossible for Plaintiff to use a lift.

43. Plaintiff can safely and easily transfer to horizontal surfaces that provide at least five inches of clearance under them.

44. Plaintiff risks injury due to falling or straining when transferring to horizontal surfaces without room for a lift to operate, such as the beds in the purportedly accessible rooms in the Sonesta Chicago Hotel.

45. An investigation performed on Plaintiff's behalf at other properties under Defendant's management and/or operation confirmed that there is no clearance under the bed for a lift to operate and are therefore not readily accessible to Plaintiff and the proposed class.

46. The investigation performed on behalf of Plaintiff further confirmed that, in addition to the Sonesta Chicago O'Hare Airport Hotel, Defendant owns, manages, and/or operates a substantial number of other hotels in the United States that offer purportedly accessible rooms with no clearance under the bed for a lift to operate.

47. These hotels include, but are not limited to, the following locations:

   A. Simply Suites Austin South – 4320 Interstate 35 Service S, Austin, TX 78745;

   B. Sonesta Simply Suites – 100 Chauvet Drive, Pittsburgh, PA 15275;

   C. The Allegro Royal Sonesta Hotel Chicago Loop – 171 W. Randolph Street, Chicago, IL 60601;

   D. Royal Sonesta Chicago Downtown – 71 E. Wacker Drive, Chicago, IL 60601;

   E. Royal Sonesta River North – 505 N. State Street, Chicago, IL 60654;

   F. Sonesta Simply Suites Chicago O'Hare Airport – 4021 N. Mannheim Rd., Schiller Park, IL 60176;

   G. Sonesta ES Suits San Diego – Rancho Bernardo – 11855 Avenue of Industry, San Diego, CA 92128;

   H. Sonesta Select Seattle Bellevue Redmond – 14615 NE 29th Place, Bellevue, WA 98007; and

   I. Sonesta Miami Airport – 950 NW LeJeune Road, Miami, Fl 33126.

48. When such conditions are present, she has had to cancel trips, stay elsewhere, and/or risk injury.

49. Defendants' policy and practice of not providing individuals with disabilities accessible hotel rooms with accessible beds is discriminatory and in violation of the ADA.

50. Plaintiff would like to stay at the Sonesta Chicago, which is located within miles of the Chicago O'Hare International Airport, the closest major airport to Plaintiff's residence.

51. Plaintiff regularly travels and uses accessible rooms and accommodations when doing so.

52. However, the lack of accessible rooms with accessible beds has deterred Plaintiff from staying at the Sonesta Chicago.

53. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendants' policy and practice of failing to provide accessible sleeping beds to persons with disabilities.

## CLASS ALLEGATIONS

54. Plaintiff brings this action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure and on behalf of herself and the following class: "All individuals who use wheelchairs or scooters for mobility and who use a lift to transfer onto horizontal surfaces, who have been, or in the future will be, denied the full and equal enjoyment of accessible sleeping surfaces (beds) at hotels owned, operated, and/or controlled by Defendants, as a result of a lack of clearance under the bed to operate a lift."

55. Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

56. Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

57. <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services, and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

   A. Whether Defendant owns, operates, and/or controls places of public accommodation subject to Title III of the ADA, and its implementing regulation;

   B. Whether Defendant provides accessible sleeping surfaces (beds) in its "accessible" hotel rooms;

   C. Whether Defendant adequately disperses guest rooms that have accessible beds; and

   D. Whether Defendant's policies and practices discriminate against Plaintiff and the putative class members in violation of Title III of the ADA and its implementing regulations.

58. <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

59. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

60. Plaintiff incorporates by reference each and every allegation herein.

61. Plaintiff brings this claim individually and on behalf of the class.

62. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

63. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

64. Defendant Sonesta Chicago operates a hotel, or "place of transient lodging," that is a place of public accommodation under Title III of the ADA. *Id*.

65. Defendant Sonesta International operates hotels, or "places of transient lodging," that are places of public accommodation under Title III of the ADA. *Id*.

66. Defendants have engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use in the "accessible" rooms at the hotels they manage and/or operate are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs and lifts.

67. Moreover, by failing to provide accessible beds or sleeping surfaces in their "accessible" rooms, Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services, and facilities available at Defendants' hotels;

    b) affording individuals with mobility disabilities unequal access to goods, services, or facilities;

    c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

    d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

68. Defendants' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause harm to the Plaintiff and the class.

69. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a. A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants failed to take action reasonably calculated to ensure that Defendants' beds or sleeping surfaces in their "accessible" rooms were fully accessible to, and independently usable by, individuals with mobility disabilities;

    b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendants to take all steps necessary to bring their beds and sleeping

surfaces in their "accessible" rooms into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendants have adopted and are following an institutional policy that will in fact cause Defendants to remain fully in compliance with the law;

      c.      An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

      d.      Payment of nominal damages, as permitted by the Supreme Court in *Uzuegbunam v. Preczewski*, 141 S.Ct, 792, 799-802 (2021) ("They [nominal damages] are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory.");

      e.      Payment of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

      f.      Such other additional or alternative relief as the Court finds just and proper.

Dated: May 5, 2022

Respectfully submitted,

*/s/ Kyle A. Shamberg*
Kyle A. Shamberg
**LYNCH CARPENTER, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kyle@lcllp.com

Nicholas A. Colella
James M. LaMarca
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

Phone: (412) 322.9243
nickc@lcllp.com
james@lcllp.com

R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
724-730-1753

*Counsel for Plaintiff*